1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| JOHN ROBERT WILSON; JACQUELINE WILSON,<br><br>                    Appellants,<br><br>    v.<br><br>JPMORGAN CHASE BANK NA ET AL.<br><br>                    Appellees. | CASE NO.2:23-cv-01827-JHC<br><br>Bankruptcy No. 2:23-bk-10919<br>                    2:23-ap-1073<br><br>ORDER AFFIRMING IN PART AND VACATING IN PART THE BANKRUPTCY COURT'S DECISIONS |

# I

## INTRODUCTION

In this consolidated appeal, John Wilson (Wilson) and Jacqueline Wilson, appeal six orders of the bankruptcy court.[1]  Four orders were issued in a bankruptcy proceeding: (1) the November 3, 2023, order overruling a debtor objection to the claim of JPMorgan Chase Bank, NA, 2:23-bk-10919 Dkt. # 89; (2) the November 17, 2023, order denying John Wilson's motion

---

[1] For ease of reference, this order, where appropriate, cites directly to the bankruptcy court's dockets.  The Court takes judicial notice of any documents in the bankruptcy court's dockets that are not included in the records on appeal, 2:23-cv-01827 Dkt. # 1; 2:24-cv-00096 Dkt. # 1, the designations of records on appeal, 2:23-cv-01827 Dkt. # 8-1; 2:24-cv-00096 Dkt. # 12-1, and the appendices of the parties' briefs, 2:23-cv-01827 Dkt. ## 21-1; 22-1; 31-1; 31-2.

for reconsideration, *id.* at Dkt. # 100; (3) the November 27, 2023, order continuing the trustee's motion to dismiss, *id.* at Dkt. # 108; and (4) the December 22, 2023, ex parte order dismissing case, *id.* at Dkt. # 122.  Two orders were issued in an adversary proceeding: (1) the December 18, 2023, order granting in part and denying in part Chase's motion to dismiss first amended complaint and granting request for judicial notice in support of motion to dismiss, 2:23-ap-1073 Dkt. # 44; and (2) the April 30, 2024, order granting JPMorgan Chase Bank, N.A.'s motion for summary judgment, *id.* at Dkt. # 100.  Having considered the parties' briefs, the record, and the applicable law, the Court, being fully advised, DISMISSES in part the appeal.  The Court AFFIRMS in part and VACATES in part the bankruptcy court's decisions and REMANDS for further proceedings consistent with this order.

## II

### BACKGROUND

The parties do not dispute these facts:

On April 22, 2005, the Wilsons refinanced a loan on their property with Washington Mutual Bank.  Specifically, the Wilsons took out a loan of $567,000 and executed a promissory note and deed of trust, which were later acquired by JPMorgan Chase Bank (Chase).  Starting around January 2011, the Wilsons stopped making payments on the loan.  In October 2012, Chase appointed Quality Loan Services Corporation of Washington (Quality) as successor trustee.  On October 17, 2012, Quality issued a notice of default and sought a nonjudicial foreclosure.

This appeal involves two of the many proceedings that followed.  2:23-cv-01827 Dkt. # 16 (consolidating two appeals).

A.      The Bankruptcy Proceeding

On May 18, 2023, Wilson filed a Chapter 13 petition for bankruptcy.  2:23-bk-10919 Dkt. # 1.  Chase and the Chapter 13 Trustee (Trustee) filed objections to confirmation of Wilson's Chapter 13 plan.  *Id.* at Dkt. ## 24; 28.  On August 1, 2023, the Trustee also filed a motion to dismiss.  *Id.* at Dkt. # 29.  On August 2, 2023, Wilson filed an objection to Chase's proof of claim.  *Id.* at Dkt. # 33.  Wilson then amended his objection.  *See e.g.*, *id.* at Dkt. # 82.  Wilson's arguments in his objection included: (1) whether Quality was a qualified successor trustee; and (2) whether the statute of limitations period had run on the Wilsons' promissory note and deed of trust.  These arguments were raised again in the adversary proceeding, described *infra* Section II.B.  2:23-ap-1073 Dkt. # 102 at 12.

On November 3, 2023, the bankruptcy court overruled Wilson's objection to Chase's proof of claim and allowed in full Chase's claim (Claim Order).  2:23-bk-10919 at Dkt. # 89.  On November 16, 2023, Wilson filed a motion for reconsideration of the Claim Order, which the bankruptcy court denied the next day.  *Id.* at Dkt. ## 97; 100.  On November 27, 2023, the bankruptcy court continued the Trustee's motion to dismiss and required Wilson to make a payment of $104,923 by December 15, 2023.  *Id.* at Dkt. # 108.  The bankruptcy court's continuance order stated that if Wilson failed to make this payment, the Trustee could submit an ex parte order to dismiss the case.  *Id.*  On December 22, 2023, the bankruptcy court found that Wilson failed to make the required payment and dismissed the case.  *Id.* at Dkt. # 122.

Wilson timely appealed the Claim Order and order denying Wilson's motion for reconsideration of the Claim Order.[2]  *Id.* at Dkt. # 111.

_____

[2] As for the timeliness of Wilson's appeal of the November 27, 2023, order continuing the Trustee's motion to dismiss and the December 22, 2023, order dismissing his bankruptcy case, see *infra* Section IV.A.1.

1

2

B.     The Adversary Proceeding

On April 28, 2023, the Wilsons sued Chase and Quality (collectively, Defendants) in

3

Snohomish County Superior Court, seeking damages and injunctive and declaratory relief.  2:23-

4

ap-1073 Dkt. # 1-2 at 4.  The Wilsons sought declaratory judgments, claiming that: (1) the

5

Washington Deed of Trust Act (DTA), RCW Chapter 61.24, violates both Article 1, Section 23,

6

of the Washington Constitution, and Article 1, Section 10, Clause 1, of the United States

7

Constitution by impairing the Wilsons' contract rights; (2) the statute of limitations period had

8

run on Defendants' rights to collect all or a portion of the debt; and (3) the nonjudicial

9

foreclosure at issue in this litigation is void.  *Id.* at Dkt. # 1-1 at 44.  The Wilsons also claimed

10

that Defendants violated the Washington Consumer Protection Act (CPA), RCW Chapter 19.86,

11

by attempting to collect time-barred debt and sought damages and a permanent injunction

12

prohibiting Defendants from collecting on the debt.  *Id.*

13

On July 6, 2023, Chase filed a motion to dismiss the Wilsons' complaint, which Quality

14

joined, and a request for judicial notice in support of the motion.  *Id.* at Dkt. ## 19–21.  The case

15

was removed to another court in this District and then transferred to the bankruptcy court.  *Id.* at

16

Dkt. ## 1; 36.

17

After the Claim Order was issued in the bankruptcy proceeding (which proceeded

18

concurrently with the adversary proceeding), the bankruptcy court held a hearing and filed on

19

December 18, 2023, an order granting in part and denying in part the motion to dismiss.  *Id.* at

20

Dkt. # 44.  The order granted in part the motion and dismissed without leave to amend the

21

Wilsons' request for declaratory judgment that the nonjudicial foreclosure in this litigation was

22

void because the DTA violates the Washington and United States Constitutions.  *Id.*  The order

23

denied in part the motion without prejudice as to the Wilsons' CPA claims based on the statute

24

of limitations.  *Id.*  The order granted the request for judicial notice of documents from the

ORDER AFFIRMING IN PART AND VACATING IN
PART THE BANKRUPTCY COURT'S DECISIONS - 4

1    Washington Secretary of State's website supporting the proposition that Quality had a resident

2    corporate officer during the time relevant to the litigation. *Id.* at Dkt. ## 44; 102 at 8. But the

3    bankruptcy court declined to accept the judicially noticed documents for the truth of the matters

4    asserted because this would have required a partial summary judgment when no motion for

5    summary judgment had yet been filed. *Id.* at Dkt. # 102 at 8. Thus, the order denied without

6    prejudice partial summary judgment on whether Quality was a qualified successor trustee. *Id.* at

7    Dkt. # 44. The Wilsons filed a motion for reconsideration of the order denying in part the

8    motion to dismiss, which was denied. *Id.* at Dkt. ## 48; 53. The Wilsons timely appealed the

9    order granting in part the motion to dismiss. *Id.* at Dkt. # 56.

10         On January 22, 2024, Chase filed a motion for summary judgment, which Quality joined.

11   *Id.* at Dkt. # 55, 74.

12         On April 30, 2024, the bankruptcy court, after holding a hearing, granted Chase's motion

13   for summary judgment (Summary Judgment Order). *Id.* at Dkt. # 100. The bankruptcy court

14   held that because the Wilsons' remaining CPA claims were based on allegations already rejected

15   in the Claim Order (i.e., that Quality was not a qualified successor trustee and that Defendants'

16   claims were barred by the statute of limitations), these claims were barred by issue preclusion

17   and, in any event, lacked merit. *Id.* at Dkt. # 102 at 10–16. The bankruptcy court dismissed the

18   Wilsons' new claim that their obligation to repay the full loan was suspended because the

19   Wilsons had not raised this claim earlier in the proceedings and, even if they had done so, this

20   claim lacked merit. *Id.* at 16–18.

21         The Wilsons filed a motion for reconsideration of the Summary Judgment Order, which

22   was denied. *Id.* at Dkt. # 103, 105. The Wilsons timely appealed the order granting the motion

23   for summary judgment. 2:23-cv-01827, Dkt. # 42.

24

ORDER AFFIRMING IN PART AND VACATING IN
PART THE BANKRUPTCY COURT'S DECISIONS - 5

## III

### STANDARDS OF REVIEW

The Court reviews questions of law de novo and the bankruptcy court's factual findings for clear error. *In re Saxman*, 263 B.R. 342, 344–45 (W.D. Wash. 2001). The Court reviews de novo both a bankruptcy court's dismissal for failure to state a claim and grant of summary judgment. *In re Hemmeter*, 242 F.3d 1186, 1189 (9th Cir. 2001); *All Blacks B.V. v. Gruntruck*, 199 B.R. 970, 972 (W.D. Wash. 1996).

## IV

### DISCUSSION

A.    Jurisdiction

    1.    Timeliness of Appeal

Wilson's appeals of the November 27, 2023, order continuing the Trustee's motion to dismiss and the December 22, 2023, order dismissing his bankruptcy case are untimely.[3] "[T]he 14–day time deadline in [Federal Rule of Bankruptcy Procedure] 8002(a) is a jurisdictional requirement that acts as an immutable constraint on [the Court's] authority to consider and hear appeals." *In re Wilkins*, 587 B.R. 97, 107 (B.A.P. 9th Cir. 2018). In his amended notice of appeal filed on January 18, 2024, Wilson contends that the Court nonetheless has jurisdiction over his appeal of the November 27, 2023, and December 22, 2023, orders regarding the dismissal of his bankruptcy case because the bankruptcy court lacked jurisdiction to issue these orders. 2:23-bk-10919 at Dkt. # 139 at 3–5. Wilson says that because the Trustee's motion to dismiss relied on the premise that the bankruptcy court would sustain Chase's claim, Wilson's

---

[3] Wilson does not contest the untimeliness of his attempt to appeal these orders. The bankruptcy court recognized that "the time for appeal of the dismissal order has run without an appeal having been filed," 2:23-bk-10919 Dkt. # 143 at 11, and the Trustee argued the untimeliness of Wilson's appeal of these orders in his brief. 23-cv-01827 Dkt. # 22 at 15–16.

appeal of the Claim Order divested the bankruptcy court of jurisdiction to rule on the Trustee's motion to dismiss. *Id.* But because Wilson filed his amended notice of appeal after the 14-day period to file an appeal had elapsed, the Court lacks jurisdiction to review Wilson's arguments about the bankruptcy court's jurisdiction to issue the November 27, 2023, and December 22, 2023, orders.

The Court dismisses Wilson's appeal of these two orders as untimely.

2.      The Summary Judgment Order

The bankruptcy court lacked jurisdiction to decide in the Summary Judgment Order two issues decided in the Claim Order: (1) whether Quality was a qualified successor trustee; and (2) whether the statute of limitations period had run on the Wilsons' promissory note and deed of trust. "The timely filing of a notice of appeal to either a district court or bankruptcy appellate panel will typically divest a bankruptcy court of jurisdiction over *those aspects of the case involved in the appeal*." *In re Sherman*, 491 F.3d 948, 967 (9th Cir. 2007) (quotation marks and citation omitted, emphasis added). Because Wilson appealed the bankruptcy court's Claim Order, the Claim Order was not a final judgment for purposes of issue preclusion. *Cf. Trulis v. Barton*, 107 F.3d 685, 691 (9th Cir. 1995) ("Since the plaintiffs never appealed the bankruptcy court's confirmation order, the order is a final judgment and plaintiffs cannot challenge the bankruptcy court's jurisdiction over the subject matter.").

The Court vacates the parts of the Summary Judgment Order pertaining to the aforementioned two issues decided in the Claim Order and remands for the bankruptcy court to, if necessary, address these issues once all proceedings regarding the Claim Order have concluded.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

B.      Qualification of Quality as Successor Trustee

The Court cannot conclude that Quality was a qualified successor trustee throughout the nonjudicial foreclosure.  A corporation is a trustee of a deed of trust if at least one of its officers is a Washington resident.  RCW 61.24.010(1)(a).  If the trustee becomes incapable of serving as trustee, "the beneficiary shall appoint a trustee or a successor trustee," and it is "[o]nly upon recording the appointment of a successor trustee" that the successor trustee is vested with all powers of the original trustee.  RCW 61.24.010(2).

Wilson says that Quality is not a qualified successor trustee because the King County Superior Court issued a finding of fact in *Hooker v. Bank of America, N.A.* that, "During 2013 and into 2014, no corporate officer of Quality resided in the State of Washington" and that Sierra Herbert-West, who was then employed by Quality as an assistant secretary, "was not a corporate officer of Quality."  2:23-cv-01827 Dkt. # 21-1 at 105.  In its hearing for the Claim Order, the bankruptcy court quoted at length the Washington Court of Appeals' later decision in *Winters v. Quality Loan Serv. Corp. of Washington, Inc.*, which holds that Herbert-West qualified as a corporate officer of Quality because Quality's bylaws "designate assistant secretaries as corporate officers with the authority to execute documents in a nonjudicial foreclosure for [Quality]."  454 P.3d 896, 906–07 (Wash. Ct. App. 2019); 2:23-bk-10919 Dkt. # 96 at 18–20. The bankruptcy court concluded that Quality was a qualified successor trustee because

> As in *Winters*, the unrebutted evidence here, including the submission of bylaws of Quality, (Docket 85, Part 3, Exhibit A), reflect that Quality has continually had an authorized officer residing in the state of Washington prior to and subsequent to its appointment as successor trustee by The Bank.

2:23-bk-10919 Dkt. # 96 at 20.

Although Quality was a qualified successor trustee throughout most of the nonjudicial foreclosure proceedings, it is unclear whether Quality temporarily stopped

ORDER AFFIRMING IN PART AND VACATING IN
PART THE BANKRUPTCY COURT'S DECISIONS - 8

being a qualified successor trustee between February 2013 and December 2013.  If so, Defendants do not contest that, under RCW 61.24.010(2), Chase needed to reappoint Quality as a successor trustee.

*Winters* is not dispositive.  There, the court held, "The undisputed record establishes [Quality] had at least one resident corporate officer in the state of Washington *throughout the nonjudicial foreclosure*."  454 P.3d at 906 (emphasis added).  In *Winters*, Quality was appointed as successor trustee in December 2013.  *Id.* at 899–900.  Here, Quality was appointed as successor trustee in October 2012.  Herbert-West's declaration in *Winters* stated that she had been a resident officer from only August 2014 through the day that the declaration was submitted.  *Id.* at 901.  *Winters* does not bear on whether Quality was a qualified successor trustee before December 2013.

The record shows that Quality was a qualified successor trustee up to February 2013. According to Quality's bylaws, a vice president qualifies as a corporate officer.  *Id.* at 907. Wilson cites several documents stating that Herbert-West was a vice president of Quality from September 2010 to February 2013, and only makes conclusory statements that Herbert-West was not a vice president of Quality during this period.  *See* 2:23-cv-01827 Dkt. # 21 at 23–25.

But Wilson cites a February 28, 2013, Annual Report in which neither Herbert-West nor any other Washington resident employee was included in a list of "Governing people."  2:23-cv-01827 Dkt. # 21-1 at 122.  In contrast, Herbert-West is included in a similar list in a January 20, 2011, Annual report, *id.* at 116, and a January 31, 2012, Annual Report, *id.* at Dkt. # 31-2 at 53–54.  Defendants do not address this discrepancy, and instead only cite Robert McDonald's declaration, which states that "Herbert-West was elected vice president in February of 2011 [and] served as vice president until July of 2013."  *Id.* at Dkt. ## 31 at 27–28; 31-2 at 48.  And the bankruptcy court did not specify—within an 80-page exhibit—any evidence other than

ORDER AFFIRMING IN PART AND VACATING IN
PART THE BANKRUPTCY COURT'S DECISIONS - 9

Quality's bylaws to conclude that there was "unrebutted evidence" to support the fact that Quality was a qualified successor trustee.  2:23-bk-10919 Dkt. # 96 at 20.  Thus, the Court cannot adequately review this issue on appeal.

The Court vacates the bankruptcy court's Claim Order as to its holding that Quality was a qualified successor trustee and remands for further consideration of this issue.  If necessary, the bankruptcy court may reach Defendants' unaddressed, alternative argument that whether Quality had a qualified successor trustee is precluded by prior litigation.  *See* 2:23-bk-10919 Dkt. # 96 at 18–19.

C.      Statute of Limitations Period on the Wilsons' Promissory Note and Deed of Trust

The Court cannot conclude that Defendants' claims regarding the Wilsons' promissory note and deed of trust were brought within the statute of limitations period.  The parties do not dispute that "[t]he commencement of a nonjudicial foreclosure proceeding tolls the six-year statute of limitations period."  *Cedar W. Owners Ass'n v. Nationstar Mortg., LLC*, 434 P.3d 554, 562 (Wash. Ct. App. 2019).  Because Wilson's argument that the limitations period has run on the promissory note and deed of trust rests solely on his contention, discussed *supra* Section IV.B, that Quality was not qualified to initiate nonjudicial foreclosure proceedings, the Court vacates the Claim Order's holding as to Wilson's statute of limitations claim and remands the issue to the bankruptcy court.

The Court dismisses Wilson's appeal of the bankruptcy court's November 17, 2023, order denying Wilson's motion for reconsideration of the Claim Order as moot.  Wilson does not expressly address this motion for reconsideration in his briefs on appeal, and the only issues Wilson raised in his motion for reconsideration are whether Quality was a qualified successor trustee and whether Defendants' claims regarding the Wilsons' promissory note and deed of trust were brought within the statute of limitations period.  2:23-bk-10919 Dkt. # 97 at 11.  Because

ORDER AFFIRMING IN PART AND VACATING IN
PART THE BANKRUPTCY COURT'S DECISIONS -
10

the Court vacates and remands as to these two issues, it need not separately address Wilson's appeal of the order denying his motion for reconsideration.

D.       The Washington Deeds of Trust Act

The Wilsons do not adequately allege that the DTA impairs their contract rights in violation of Article 1, Section 23 of the Washington Constitution or Article 1, Section 10, Clause 1 of the United States Constitution.  These sections of the Washington and United States Constitutions, which are interpreted co-extensively, prohibit Washington from passing a law that impairs private contracts.  *Washington Food Indus. Ass'n & Maplebear, Inc. v. City of Seattle*, 524 P.3d 181, 199 (Wash. 2023).  A threshold question for an alleged violation of these sections "is whether the state law has, in fact, operated as a substantial impairment of a contractual relationship."  *Id.* (quotation marks and citation omitted).

The Wilsons do not sufficiently allege that the DTA has substantially impaired their promissory note and deed of trust.  In 2018, the Washington state legislature replaced the word "owner" with "holder" in a provision of the DTA that now provides that before a notice of trustee's sale is recorded for certain properties, "the trustee shall have proof that the beneficiary is the *holder* of any promissory note or other obligation secured by the deed of trust."  RCW 61.24.030(7)(a) (emphasis added).  This amendment was passed following the Washington State Supreme Court's decision in *Brown v. Washington State Dep't of Com.*, which holds that, despite the use of "owner" in the previous version of RCW 61.24.030(7)(a), proof that a beneficiary was the holder of a promissory note still satisfies RCW 61.24.030(7)(a).  359 P.3d 771, 787 (Wash. 2015).  The Wilsons do not adequately explain how the 2018 amendment to the DTA impairs their deed of trust and argue only that *Brown* was wrongly decided.[4]  But "[a] federal court

---

[4] The Wilsons make a conclusory argument in their opening brief that the terms of their deed of

applying state law must apply the law as it believes the state supreme court would apply it."

*Stephens v. Target Corp.*, 482 F. Supp. 2d 1234, 1235 (W.D. Wash. 2007).  The Washington

State Supreme Court has spoken on whether a holder of a promissory note can be a beneficiary

of a deed of trust under the DTA, and the Wilsons point to no contrary decision by the

Washington State Supreme Court or higher legal authority.

The Court affirms the bankruptcy court's grant of the motion to dismiss the Wilsons'

constitutional claims.

E.      The Washington Consumer Protection Act

The Court cannot conclude that there is no genuine issue of material fact as to whether

the nonjudicial foreclosure proceedings violate the CPA.  To prevail on a CPA claim, "a plaintiff

must establish five distinct elements: (1) unfair or deceptive act or practice; (2) occurring in trade

or commerce; (3) public interest impact; (4) injury to plaintiff in his or her business or property;

(5) causation."  *Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co.*, 719 P.2d 531, 533

(Wash. 1986).  A violation of the DTA can constitute "an actionable claim for damages under the

CPA."  *Winters*, 454 P.3d at 903 (Wash. Ct. App. 2019) (citing *Lyons v. U.S. Bank Nat'l Ass'n*,

336 P.3d 1142, 1150 (Wash. 2014)).

As an initial matter, the Wilsons have not shown that they have suffered an injury

throughout the course of the nonjudicial foreclosure proceedings.  The Wilsons "can satisfy the

CPA's injury requirement with proof that [their] property interest or money is diminished as a

---

trust conflict with the 2018 amendment to the DTA.  2:23-cv-01827 Dkt. # 21 at 26.  Defendants say that
there is no such inconsistency, citing provisions of the Wilsons' promissory note, which state that "The
Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note
is called the 'Note Holder,'" and the Wilsons' deed of trust, which states that sale of the promissory note
"might result in a change in the entity . . . that collects Periodic Payments . . . and performs other
mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law."  *Id.* at
Dkt. # 31 at 29; *see also Brown*, 359 P.3d at 781 (citing similar language in Brown's promissory note).  In
their reply, the Wilsons do not respond to Defendants' citations.

result of [a violation of the DTA], even if the expenses incurred by the statutory violation are minimal." *Trujillo v. Nw. Tr. Servs., Inc.*, 355 P.3d 1100, 1108 (Wash. 2015).  Despite the bankruptcy court's holding that the Wilsons have shown no evidence to support their allegation that they have incurred expenses in litigating the validity of the nonjudicial foreclosure proceedings, the Wilsons do not point to any evidence on appeal.  2:23-ap-1073 Dkt. 102 at 15.

But the sale of the Wilsons' home on March 8, 2024—which is undisputed—could constitute an injury for purposes of their CPA claim.  Defendants say that the sale of the Wilsons' home cannot establish an injury because the Wilsons never amended their pleadings to include this fact.  2:23-cv-01827 at Dkt. # 31 at 32–33.  Defendants cite *Pac. Coast Fed'n of Fishermen's Ass'ns v. Glaser*, that states that "if the complaint does not include the necessary factual allegations to state a claim, raising such claim in a summary judgment motion is insufficient to present the claim to the district court."  945 F.3d 1076, 1086–87 (9th Cir. 2019) (quotation marks and citation omitted).  But in *Pac. Coast Fed'n of Fishermen's Ass'ns*, the Ninth Circuit was concerned with whether a plaintiff had provided notice to a defendant of "what the plaintiff's claim is and the grounds upon which it rests."  *See id* (quotation marks and citation omitted).  Defendants had notice of the impending sale of the Wilsons' home.  The Wilsons' complaint alleges that the injury element of their CPA claim is met because "[u]nless the sale is halted, Plaintiffs' Property will be sold at public auction on May 5th because, at least in significant part, Plaintiffs failed to pay $275,755.24 of unenforceable, time-barred debt."  2:23-ap-1073 Dkt. #1-1 at 14 ¶ 4.40.

The bankruptcy court did not consider whether the sale of the Wilsons' home could constitute an injury under the CPA.[5]  Rather than rule on this issue in the first instance, the Court

---

[5] The bankruptcy court cited a prior case involving the Wilsons and the same loan at issue in this appeal, but it does not necessarily apply given the Court's vacating and remanding of the Wilsons' claim

ORDER AFFIRMING IN PART AND VACATING IN
PART THE BANKRUPTCY COURT'S DECISIONS -
13

1   vacates the Summary Judgment Order as to the Wilsons' CPA claim and remands for further

2   consideration of this claim along with consideration of whether Quality was a qualified successor

3   trustee under RCW 61.24.010(1)(a).[6]

4   F.      Suspension of the Wilsons' Obligation to Repay the Full Loan

5           The bankruptcy court did not err in holding that the Wilsons could not raise for the first

6   time at summary judgment their argument that their obligation to repay the full loan was

7   suspended.  The Wilsons misunderstand the bankruptcy court's holding that their argument was a

8   "new legal theory" to mean that their argument was previously unavailable under the law.  2:23-

9   cv-01827 Dkt. # 30 at 15.  The Wilsons say that because their argument about the suspension of

10  their obligation to repay their full loan was supported by existing law, it cannot have been a "new

11  legal theory."  *Id.* at 15–16.  But the bankruptcy court's use of "new" means that the Wilsons'

12  legal theory was not raised in their complaint.  It is precisely because the Wilsons could have

13  raised their argument about the suspension of their obligation to repay their loan that it is

14  procedurally improper for the Wilsons to raise it for the first time at summary judgment.  *See*

15  *Coleman v. Quaker Oats Co.*, 232 F.3d 1271, 1292–94 (9th Cir. 2000); *Wasco Prod., Inc. v.*

16  *Southwall Techs., Inc.*, 435 F.3d 989, 992 (9th Cir. 2006) ("Simply put, summary judgment is

17  not a procedural second chance to flesh out inadequate pleadings." (quoting *Fleming v. Lind–*

18  *Waldock & Co.*, 922 F.2d 20, 24 (1st Cir. 1990)).

19

20  _____

21  that Quality was not a qualified successor trustee.  2:23-ap-1073 Dkt. # 102 at 15–16.  In *Wilson v. JPMorgan Chase, N.A.*, another court in this District held that the Wilsons could not allege an injury under the CPA because "their own failure to meet their loan obligation is the 'but for' cause of their

22  'damages.'"  2020 WL 885971, at *5 (W.D. Wash. Feb. 24, 2020) (citation omitted).  But if Quality was not a qualified successor trustee, then the Wilsons' failure to meet their loan obligation would not be the

23  only "but for" cause of their damages.  Defendants' unlawful nonjudicial foreclosure proceedings could also be a "but for" cause of damages under the CPA.

24          [6] In the interest of judicial economy, this avoids forcing the Wilsons to re-file their CPA claim.
ORDER AFFIRMING IN PART AND VACATING IN
PART THE BANKRUPTCY COURT'S DECISIONS -
14

1

2

    The Court affirms the Summary Judgment Order as to the Wilsons' claim regarding the
suspension of their obligation to repay the full loan.

3

**V**

4

**CONCLUSION**

5

    Given the above, the Court DISMISSES Wilson's appeals of (1) the November 27, 2023,

6

order continuing the Trustee's motion to dismiss; (2) the December 22, 2023, order dismissing

7

Wilson's bankruptcy case; and (3) the November 17, 2023, order denying Wilson's motion for

8

reconsideration of the Claim Order.  The Court VACATES parts of the Claim Order regarding

9

(1) whether Quality was a qualified successor trustee; and (2) whether the statute of limitations

10

had run on the Wilsons' promissory note and deed of trust.  The Court VACATES parts of the

11

Summary Judgment Order regarding (1) whether Quality was a qualified successor trustee; (2)

12

whether the statute of limitations had run on the Wilsons' promissory note and deed of trust; and

13

(3) the Wilsons' CPA claim.  The Court AFFIRMS as to all other issues decided in the orders

14

that are the subject of this appeal.  The Court REMANDS the case to the bankruptcy court for

15

further proceedings consistent with this order.

16

17

    Dated this 26th day of September, 2024.

18

19

20

John H. Chun
United States District Judge

21

22

23

24